**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATE OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 14-CV-5617 |
| v. | ) | |
| | ) | |
| ENAAM M. ARNAOUT, | ) | Judge Joan B. Gottschall |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Enaam Mahmoud Arnaout became a naturalized U.S. citizen on March 10, 1994. The

United States filed a five-count complaint on July 23, 2014, seeking to denaturalize Arnaout in

accordance with 8 U.S.C. § 1451(a) , which permits the court to set aside a naturalization order

that was "illegally procured or . . . procured by concealment of a material fact or by willful

misrepresentation," 8 U.S.C. § 1451(a) (2012). Each count of the government's original

complaint sets forth an alleged separate ground for denaturalizing Arnaout under § 1451(a). (*See*

ECF No. 1 ¶23–64.) The court has before it the government's motion seeking leave to file an

amended complaint adding an additional ground for denaturalization based on evidence that

came to light during discovery. For the following reasons, the court grants the government's

motion.

**I. Background**

Discovery commenced after the court denied the government's motion for judgment on

the pleadings in August 2015. (*See* ECF No. 20 at 1 (denying motion); ECF No. 21 at 1 (setting

deadline to exchange initial disclosures).) On January 5, 2016, the court granted the parties'

agreed motion to extend the government's deadline to make initial disclosures and complete

discovery.  As a result, the government had until January 30, 2016, to make its initial disclosures;

the court also set February 25, 2016, as the deadline for the government to produce certain

documents and gave the parties until June 1, 2016, to complete discovery.  (ECF No. 24 at 1.)

The government filed the instant motion to amend on May 12, 2016.  (ECF No. 29.)  It

represents that the proposed new count stems from facts learned during an interview conducted

April 19, 2016, of Arnaout's former spouse, Nancy C. Noyes ("Noyes").  (*Id*. at 2, 5–6.)

Noyes's record of sworn statement attached to the government's motion states that she married

Arnaout on March 9, 1989, in Pakistan.  (ECF No. 29-1 at 1.)  Noyes avers that she filed for

divorce from Arnaout in March 1993 because she "rarely saw him once he moved to the United

States in June 1990."  (*Id*. at 2.)  Noyes elaborates:

> After I filed divorce papers with the court, I contacted someone to
> serve [Arnaout] and arranged to have [Arnaout] served in a hotel in
> Titusville, Florida, where we were staying. The process server
> served [Arnaout] with the divorce papers at the hotel. [Arnaout]
> was not happy, and said he did not want to get divorced. After
> [Arnaout] was served, the process server came to my home to give
> me a receipt for the service. In addition to the service on [Arnaout],
> the process server also mailed a copy of the divorce papers to a
> P.O. box [Arnaout] kept near Orlando, in Goldenrod, Florida. I
> was with him when he checked the P.O. box and received those
> papers as well. This happened within a week of the service at the
> hotel. [Arnaout] said he couldn't believe that I got him twice. He
> was upset about this. He begged me to rethink getting the divorce.
> By this point, [Arnaout] had already started moving his things out
> of our home. After this time, I saw him about five more times, and
> he moved his stuff out completely. I did not see him at all after
> 1994.

(ECF No. 29-1 at 2.)

Based on Noyes's statement, the government wishes to add allegations that Arnaout was

ineligible for naturalization because the requirements of neither 8 U.S.C. § 1427(a) nor 1430(a)

were satisfied when he applied on April 8, 1993.  (*See* Proposed Am. Compl. ¶¶ 11, 83–91, ECF

No. 29-4.)  The first of those statutes, § 1427(a), requires an applicant for naturalization to have

resided "continuously, after being lawfully admitted for permanent residence, within the United States for at least five years, . . . [and to have] been physically present therein for periods totaling at least half of that time" during the same five-year period. The five-year residence requirement becomes three years for a person whose spouse is a U.S. citizen under § 1430(a), provided that the applicant, "during the three years immediately preceding the date of filing his application[,] has been living in marital union with the citizen spouse . . . . ." 8 U.S.C. § 1430(a) (1988) (listing exceptions not discussed by the parties).

The government also alleges in its proposed amended complaint that Arnaout falsely stated that he was married to Noyes, rather than separated, in his form N-445, notice of final naturalization hearing, on March 10, 1994. (*See* Proposed Am. Compl. ¶¶ 16–17, 20–21, 80.) The government proposes to plead that Arnaout had separated from Noyes at least one month earlier. (*Id.* ¶ 28.) Arnaout acknowledges the government's contention that his Illinois divorce petition filed in August 1994 contains a statement that he and Noyes separated six months earlier, i.e., in or around February 1994.[1] (*See* Resp. 9–10, ECF No. 34; Proposed Am. Compl. ¶¶ 9, 17.)

## II. Legal Standard

Arnaout urges the court to analyze the government's request for leave to amend under the two-step approach used when the deadline to amend pleadings set in a Federal Rule of Civil Procedure 16 scheduling order has passed. *See, e.g.*, *Arrigo v. Link*, 836 F.3d 787, 797 (7th Cir. 2016); *Adams v. Indianapolis*, 742 F.3d 720, 733–34 (7th Cir. 2014) (explaining that "the district

---

[1] A Florida court entered a divorce decree dissolving Arnaout and Noyes's marriage on August 30, 1993. (ECF No. 29-3.) The record includes a copy of the alleged docket sheet for Arnaout's pro se divorce proceedings filed in the Circuit Court of Cook County, Illinois, on August 15, 1993 (Case No. 1994D012129). (ECF No. 34-1, Ex. D.) The parties have not filed a copy of Arnaout's petition in that proceeding, however. The docket sheet reflects that Arnaout's Illinois divorce proceeding was dismissed for want of prosecution on April 2, 1996. (*See id.*) The court stresses that it makes no finding on what, if any, allegations Arnaout made in his Illinois divorce petition.

court is 'entitled to apply the heightened good-cause standard of Rule16(b)(4) before considering whether the requirements of Rule 15(a)(2) were satisfied' when a party moves to amend a pleading after the deadline set in the scheduling order (quoting *Alioto v. Town of Lisbon*, 651 F.3d 715, 719 (7th Cir. 2011))). The court set deadlines for exchanging initial disclosures and a discovery cut-off in this case, but it set no deadline for amending pleadings. Therefore, the court need not conduct a Rule 16(b)(4) analysis. *See Arrigo*, 836 F.3d at 797 (collecting cases in which deadline had passed); *Adams*, 742 F.3d at 733–34 (affirming two-step analysis where plaintiff moved to amend six months after scheduling-order deadline to amend pleadings).

Under Rule 15(a)(2), "[t]he court should freely give leave [to amend a pleading] when justice so requires" before trial. Rule 15(a)(2) affords "[D]istrict courts . . . broad discretion to deny leave to amend where there is undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies, undue prejudice to the defendants, or where the amendment would be futile." *Hukic v. Aurora Loan Servs.*, 588 F.3d 420, 432 (7th Cir. 2009) (quoting *Arreola v. Godinez,* 546 F.3d 788, 796 (7th Cir. 2008)) (brackets in original); *accord Bell v. Taylor*, 827 F.3d 699, 705 (7th Cir. 2016) (quoting *Bethany Pharmacal Co., v. QVC, Inc.*, 241 F.3d 854, 861 (7th Cir. 2001)).

### III. Analysis

Arnaout asserts that the government has been investigating his marital status for over a decade. He maintains, therefore, that the government unduly delayed making the instant motion. He also asserts that the proposed amendment is futile.

### A. Undue Delay and Prejudice

Under the liberal standard of Federal Rule of Civil Procedure 15(a)(2), "[d]elay alone is usually not sufficient to deny a motion for leave to amend." *Arrigo v. Link*, 836 F.3d 787, 797

(7th Cir. 2016) (citing *Dubicz v. Commonwealth Edison Co.*, 377 F.3d 787, 793 (7th Cir. 2004)). Instead, "[t]he underlying concern is the prejudice to the defendant rather than simple passage of time." *McCoy v. Iberdrola Renewables, Inc.*, 760 F.3d 674, 687 (7th Cir. 2014) (citing *Sanders v. Venture Stores, Inc.*, 56 F.3d 771, 773–74 (7th Cir. 1995)) (other citation omitted).

Arnaout argues that the government unduly delayed making its request to amend because it previously investigated his marital status. He premises his argument principally on the government's response to his motion *in limine* filed in a related criminal case in 2003. (Resp. Mot. Leave to Am., Ex. B, ECF No. 34-1.) On the first page of that response, the government acknowledged that it investigated whether Arnaout made "false declarations [in his application for naturalization] regarding his marital status." (*Id*. at 1.) Arnaout maintains, therefore, that the government has known at least since that time – and indeed since 1994 when his divorce decree became a matter of public record – of his marital status. He, therefore, calls the government's explanation for the alleged delay "inconsistent at the least and incredible at most" and asserts that he will be prejudiced by reopening discovery to explore the newly pleaded theory of denaturalization. (Resp. 9, 16, ECF No. 34.)

Nothing in the record demonstrates, however, that facts supporting the "marital union" theory the government proposes to plead were available to it in 2003 or when it filed its original complaint in this action. The government responds, subject to the strictures of Federal Rule of Civil Procedure 11, that its investigation before April 19, 2016 concerned different questions about Arnaout's marital status, i.e., whether Arnaout had multiple wives and children when he applied for naturalization. (Reply 2 (citing Def.'s Opp. Ex. C).) Arnaout does not allege that the government had evidence from which it could have raised the question about whether Arnaout and Noyes lived in "marital union" as that phrase is used in § 1430(a) before Noyes's interview

on April 19, 2016.[2]

Hence, the present record does not warrant a finding of prejudice or undue delay. In *Dubicz v. Commonwealth Edison Co.*, 377 F.3d 787, 793 (7th Cir.2004), for instance, the defendant argued that allowing the plaintiff to amend his complaint eight months after it was dismissed would result in undue prejudice because "memories of witnesses have faded and documents have been lost during the intervening eight months." The district court agreed, and the Seventh Circuit reversed, stating that "[t]he case for prejudice is stated, however, only in the most conclusory of terms. No particular witnesses or documents are identified by [the defendant]." *Id*. Here, Arnaout states in conclusory fashion that he will be prejudiced by being required to conduct further discovery, but he identifies no witnesses with faded memories, documents that are unavailable, or avenues of discovery that will be closed to him. (*See* Resp. 16.)

**B. Futility**

Arnaout claims that allowing the government to amend its complaint as it proposes would be an exercise in futility. To the extent Arnaout seeks summary judgment on the evidence attached to the government's motion to amend, "[t]he test for futility . . . does not depend on whether the proposed amendment could potentially be dismissed on a motion for summary judgment; instead, a proposed amendment is futile only if it could not withstand a Rule 12(b)(6) motion to dismiss." *Peoples v. Sebring Capital Corp.*, 209 F.R.D. 428, 430 (N.D. Ill. 2002) (quoting *Rose v. Hartford Underwriters Ins. Co.*, 203 F.3d 417, 421 (6th Cir.2000)) (ellipsis in original); *accord Runnion ex rel. Runnion v. Girl Scouts of Greater Chi. and Nw. Ind.*, 786 F.3d

---

[2] Arnaout also relies on a case applying Federal Rules of Civil Procedure 6(b) and 56(f) to establish the proposition that new evidence of a previously known fact cannot be used to obtain relief from a deadline. *See Blue v. Hartford Life & Acc. Ins. Co.*, 698 F.3d 587, 593 (7th Cir. 2012). Putting to one side the differences in the rules applied, this case is inapposite here for the reason stated in the text.

510, 524 (7th Cir. 2015) (citing *Gen. Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1085 (7th Cir.1997)).

Most of Arnaout's futility arguments go to the weight and sufficiency of the evidence attached to the government's motion for leave. Arnaout contends that Noyes's sworn statement, contrary to the government's allegations (*see* Proposed Am. Compl. ¶ 25), shows that she and Arnaout resided together in a hotel when he applied for naturalization in April 1993. He also cites a case considering affidavits at summary judgment to argue that Noyes's sworn statement cannot create a fact issue because she contradicts her prior, sworn statement that she was married to Arnaout on Arnaout's naturalization application.[3] *See Amadio v. Ford Motor Co.*, 238 F.3d 919, 926 (7th Cir. 2001). The pleading of a claim in a complaint generally precedes discovery on the facts relevant to that claim. *See* Fed. R. Civ. P. 12(d) (providing that "all parties must be given a reasonable opportunity to present all material that is pertinent" before a motion to dismiss for failure to state a claim is converted to a motion for summary judgment); *see also id.* R. 26(d). "A court can sensibly rely on the facts of a case only after they have been established, not before," and discovery on the issues raised by the government's proposed new claim has not commenced at all, as far as this record shows. *Peoples*, 209 F.R.D. at 430–31 (granting motion for leave to amend and rejecting bid to consider summary judgment evidence for this reason).

Arnaout also argues that the government's proposed complaint fails to state a claim on its face because he did not willfully make false statements in his Illinois divorce petition to obtain an immigration benefit. (Resp. Mot. Leave to Am. 12–13.) Though couched as an attack on the pleadings, this argument also requires the court to resolve a factual dispute and accept Arnaout's interpretation of Noyes's sworn statement dated April 19, 2016, including finding that Arnaout

---

[3] The court intimates no view on whether Noyes's statements in any way contradict each other.

lived in a hotel with Noyes and was attempting to reconcile.  (*See id*. at 14 ("Arnaout and Ms.

Noyes, by her own admissions, were together, and were still staying together in 1993")).  The

court again declines Arnaout's procedurally improper invitation to render summary judgment at

this juncture.  Moreover, Arnaout has the government's proposed pleading backward.  The

government proposes to plead that Arnaout falsely stated that he was not separated in his

application for naturalization dated April 8, 1993.  (Proposed Am. Compl. ¶ 28.)  The

government points to the date given in Arnaout's Illinois divorce petition filed in 1994 to

substantiate its claim that Arnaout made a false statement in 1993.  (*See id*.)[4]

## IV. Conclusion

For the foregoing reasons, the government's motion for leave to file an amended

complaint (ECF No. 29) is granted, and the clerk is directed to enter the attached amended

complaint separately on the docket.  To allow the parties time to conduct discovery on the

government's newly pleaded allegations, the court extends the discovery cut-off to January 31,

2017, and sets a status conference for February 3, 2017, at 9:30 a.m.


Date:   November 16, 2016                           _____/s/_____
                                                    Joan B. Gottschall
                                                    United States District Judge


---

[4] The question of whether Arnaout and Noyes lived "in marital union" as 8 U.S.C. § 1430(a) uses the phrase should not be confused with the question of whether Arnaout falsely stated that he was not separated from Noyes in April 1993.  Arnaout only raises the second question in his response to the instant motion.  There is conflicting authority on whether and to what degree the couples' subjective intentions affect the "living in marital union" inquiry. *Compare* 8 C.F.R. § 319.1(b ("[a]n applicant lives in marital union with a citizen spouse if the applicant actually resides with his or her current spouse"), *and United States  v. Maduno*, 40 F.3d 1212, 1215–17 (11th Cir. 1994) (discussing and collective cases and rejecting jury instruction requiring consideration of the couple's subjective "intent to permanently separate"), *with In re Olan*, 257 F. Supp. 884, 887, 890 (S.D. Cal. 1966) (relying on evidence that neither spouse intended to separate permanently even though couple separated for two months and concluding that "living in marital union" required only "living in the status of a valid marriage").  Further factual development would, to say the least, be beneficial before addressing this issue.