

**FILED** PK
11/16/2016
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | No. 1:14-cv-05617 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | |
| v. | ) | **FIRST AMENDED COMPLAINT TO** |
| | ) | **REVOKE NATURALIZATION** |
| | ) | |
| ENAAM MAHMOUD ARNAOUT | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

## I. JURISDICTION AND VENUE

1. This is an action under 8 U.S.C. § 1451(a) to revoke and set aside the order admitting Enaam Mahmoud Arnaout ("Defendant"), to citizenship and to cancel Certificate of Naturalization No. 20910984.

2. The affidavit of Susan K. Vasquez, a Special Agent with U.S. Immigration and Customs Enforcement ("ICE") in the Department of Homeland Security ("DHS"), showing good cause for this action, as required by 8 U.S.C. § 1451(a), is attached as Exhibit A.[1]

3. Plaintiff is the United States of America. This Court has jurisdiction pursuant to 28 U.S.C. § 1345 and 8 U.S.C. § 1451(a).

4. Defendant is a naturalized United States citizen, whose last known residence in the United States was in Palos Hills, Illinois. Pursuant to 8 U.S.C. § 1451(a), Plaintiff has properly filed this action within the Northern District of Illinois.

---

[1] On March 1, 2003, the Immigration and Naturalization Service ("INS") ceased to exist as an independent agency and many of its relevant functions transferred to DHS. *See* Homeland Security Act of 2002, Pub. L. No. 107-296, 110 Stat. 2135 (Nov. 25, 2002). However, because the events in this case took place prior to the transfer, the agency will be referred to as the "INS" throughout this Complaint rather than DHS.

## II.  FACTUAL BACKGROUND

### IMMIGRATION AND MARITAL HISTORY

5.  Defendant, a native and citizen of Syria, entered the United States on June 20, 1990, on a CR1immigrant visa (conditional resident immigrant visa for the spouse of a United States citizen).  He was thereby admitted as a conditional permanent resident of the United States. Defendant and Nancy Catherine Noyes ("Noyes"), Defendant's United States citizen wife, were married on March 9, 1989.  Defendant's INS file ("A file") number is A40241878.

6.  Defendant and Noyes petitioned the INS to remove the conditions on Defendant's residence on April 10, 1992.  The INS approved Defendant's petition on May 7, 1992.

7.  On or about March 5, 1993, Noyes filed a Petition for Dissolution of Marriage from Defendant with the Circuit Court for Brevard County, Florida.  In her petition, Noyes stated that the basis for the dissolution of marriage was that it was irretrievably broken.

8.  Defendant was served with Noyes' Petition for Dissolution of Marriage from Defendant on or about March 8, 1993.

9.  On or about August 15, 1994, Defendant filed a Petition for Dissolution of Marriage from Noyes with the Circuit Court for Cook County, Illinois.  In his petition, Defendant stated that he and Noyes had lived separate and apart for at least six months and that the parties agreed that the marriage was broken and could not be preserved.

10.  The Circuit Court for Brevard County, Florida granted Defendant and Noyes a divorce on August 30, 1994.

### NATURALIZATION PROCEEDINGS

#### Application for Naturalization

11.  On April 8, 1993, Defendant filed an INS Form N-400, Application for

2

Naturalization, based on having been a permanent resident of the United States for at least three (3) years and having been married to a United States citizen for those three (3) years.

a. Subpart A in Part 4 of Defendant's INS Form N-400, captioned, "Information about your residences and employment," instructs the applicant to "[l]ist your addresses during the last five (5) years or since you became a permanent resident, whichever is less," and to provide the address's street number and name, city, state, country, and zip code, as well as the dates of the address (from and to). In response to the instruction in Subpart A of Part 4 of his INS Form N-400, Defendant stated that his address was "3868 Wethersfield Cir – Titusville, FL 32780" and that address was from "11-1-92" to "current."

b. Subpart B in Part 4 of Defendant's INS Form N-400, captioned, "Information about your residences and employment," instructs the applicant to "[l]ist your employers during the last five (5) years," and provide the employer's name, the dates employed, and the occupation or position held. In response to the instruction in Subpart B of Part 4 of his INS Form N-400, Defendant stated that he was employed by "B.I.F." from February 1, 1993 to "current" as a "Coordinator" and that he was employed by "M.E.F." from January 1, 1992 to December 31, 1992, as a "Telmerketer."

c. Part 5 of Defendant's INS Form N-400, captioned, "Information about your marital history," instructs the applicant to answer the "[t]otal number of times you have been married" and "[i]f you are now married, [to] complete the following regarding your husband or wife." In response to the request in Part 5, "Total number of times you have been married," Defendant answered "2." Defendant provided the name Nancy C. Noyes, an address of "3868 Wethersfield Cir Titusville FL 32780," and answered "U.S.A." to the

3

field requesting his spouse's citizenship.

d.  Part 5 of Defendant's INS Form N-400 also requests that "[i]f you have ever previously been married or if your current spouse has been previously married, please provide the following on separate paper: Name of prior spouse, date of marriage, date marriage ended, how marriage ended and immigration status of prior spouse."  Defendant provided a separate paper with his INS Form N-400 that states the following:

> Enaam M. Arnaout
> married: Faten Arnaout
> on date: 7-5-85
> divorced on: 6-20-88
> currently living in Syria – no US immigration
> no children
> citizenship: Syrian
> immigration status: n/a

and

> Nancy C Noyes
> married: Eric M. Millstein
> on date: 3-7-82
> divorced in: 1983
> citizenship: USA
> immigration status: n/a

e.  Question 12(b) in Part 7 of Defendant's INS Form N-400, captioned, "Additional eligibility factors," asks "Have you ever . . . given false testimony for the purpose of obtaining any immigration benefit?"  In response to Question 12(g), Defendant stated, "No."

f.  Question 15(a) in Part 7 of Defendant's INS Form N-400, captioned, "Additional eligibility factors," asks "Have you ever . . . knowingly committed any crime for which you have not been arrested?"  In response to Question 15(a), Defendant stated, "No."

4

g. Part 9 of Defendant's INS Form N-400, captioned, "Memberships and organizations," instructs the applicant to, "[l]ist your present and past membership in or affiliation with every organization, association, fund, foundation, party, club, society, or similar group in the United States or in any other place." In response to the instruction in Part 9 of his INS Form N-400, Defendant stated, "None."

12. Defendant signed his INS Form N-400 under the penalty of perjury under the laws of the United States, thereby certifying that the information he provided was true and correct, and filed it with the INS on April 8, 1993.

### Naturalization Interview

13. On September 8, 1993, an INS officer placed Defendant under oath and interviewed him regarding his INS Form N-400, Application for Naturalization. During this interview, Defendant testified substantially as follows:

a. Consistent with his statement in Subpart A in Part 4 of his INS Form N-400, Defendant testified that his address from "11-1-92" to "current" was "3868 Wethersfield Cir – Titusville, FL 32780."

b. Consistent with his statement in Subpart B in Part 4 of his INS Form N-400, Defendant testified that he was employed by "B.I.F." as a coordinator from February 1, 1993 to present, and employed by "M.E.F." as a telemarketer from January 1, 1992 to December 31, 1992.

c. Consistent with his statement in Part 5 of his INS Form N-400, Defendant testified that Nancy C. Noyes was his current wife and that her address was "3868 Wethersfield Cir Titusville FL 32780."

d. Consistent with his statement at Question 12(g) in Part 7 of his INS Form N-

400, Defendant testified that he had never given false testimony for the purpose of obtaining any immigration benefit.

e. Consistent with his statement at Question 15(a) in Part 7 of his INS Form N-400, Defendant testified that he had never knowingly committed any crime for which he had not been arrested.

f. Consistent with his statement in Part 9 of his INS Form N-400, Defendant testified that he had never been a member or affiliated with any organization, association, fund, foundation, party, club, society, or similar group in the United States or in any other place.

14. At the end of his naturalization interview on September 8, 1993, Defendant again signed his INS Form N-400 under penalty of perjury under the laws of the United States, thereby attesting that the information in his application for naturalization – including any corrections and supplements – was true to the best of his knowledge and belief.

15. Based on Defendant's INS Form N-400 and sworn testimony during his naturalization interview, the INS approved Defendant's application for naturalization on November 1, 1993.

**Naturalization Ceremony**

16. On March 10, 1994, prior to naturalizing, Defendant completed INS Form N-445, Notice of Final Naturalization Hearing, ("Form N-445"). The questions on Form N-445 refer only to what has happened *after* the date an applicant filed his INS Form N-400.

17. In his Form N-445, Defendant answered "no" in response to Question 1, which asked: "Have you married, or been widowed, separated, or divorced?"

18. In his Form N-445, Defendant answered "no" in response to Question 3, which

asked: "Have you knowingly committed any crime or offense, for which you have not been arrested; or have you been arrested, cited, charged, indicted, convicted, fined, or imprisoned for breaking or violating any law or ordinance, including traffic violations?"

19. In his Form N-445, Defendant answered "no" in response to Question 4, which asked: "Have you joined any organization, including the Communist Party, or become associated or connected therewith in any way?"

20. In his Form N-445, Defendant provided the address "3868 Wethersfield Cir Titusville FL 32780" as his full address.

21. On March 10, 1994, Defendant signed his Form N-445, thereby certifying that the information he provided was true and correct, and filed it with the INS.

22. Based on Defendant's approved INS Form N-400, his testimony at his naturalization interview, and the answers Defendant provided on his Form N-445, the INS administered the oath of allegiance to Defendant on March 10, 1994, admitted him to United States citizenship, and issued Certificate of Naturalization Number 20910984.

## FALSE STATEMENTS AND TESTIMONY

### Marriage to Catherine Noyes

23. At the time he filed his INS Form N-400 with the INS on April 8, 1993, Defendant and Noyes had already separated and Defendant was not residing with Noyes.

24. At the time he filed his INS Form N-400, Defendant had been personally served with Noyes' Petition for Dissolution of Marriage from Defendant.

25. At the time he filed his INS Form N-400, Defendant had already moved out of the residence he shared with Noyes at 3868 Wethersfield Circle, Titusville, Florida.

26. Defendant has admitted that he was separated from Noyes since at least February

1994.

27. Based on his having moved out of the residence he shared with Noyes prior to filing his INS Form N-400 with the INS on April 8, 1993, Defendant's statement that his then current residence was 3868 Wethersfield Circle, Titusville, Florida – the same address as Noyes' – was false. Likewise, Defendant's testimony during his sworn naturalization interview that his current residence was 3868 Wethersfield Circle, Titusville, Florida – the same address as Noyes' – was also false. Defendant knew these statements and testimony to be false, and he provided them with the intent to deceive and to obtain an immigration benefit.

28. Based on his admission in the Petition for Dissolution of Marriage from Noyes, filed with the Circuit Court for Cook County, Illinois, Defendant's statement on his INS Form N-445 that he had not separated after the date he filed his petition was false. Defendant knew this statement to be false, and he provided it with the intent to deceive and to obtain an immigration benefit.

**Employment**

29. From on or about January 1989 until the time he arrived in the United States in June 1990, Defendant was an employee of *Lajnat Al-Birr Al-Islamiah* ("LBI"). LBI is also known as the Islamic Benevolence Committee.

 a. In or about 1987, Adel Batterjee founded LBI in Saudi Arabia and Pakistan.

 b. One of the purposes of LBI was to raise funds in Saudi Arabia to provide support to the mujahedeen then fighting in Afghanistan.

 c. LBI also provided financial and operational support to fighters associated with Usama bin Laden and Gulbuddin Hekmatyer. The United States Department of Treasury designated Hekmatyer as a Specially Designated Global Terrorist on February 18, 2003.

Bin Laden was the founder of al-Qa'ida and the leader responsible for the September 11, 2001 attacks on the United States.

d.  On December 21, 2004, the United States Department of Treasury, under Executive Order 13224, designated Batterjee as a provider of financial and material support to al-Qa'ida and bin Laden.

30.  Based on his employment with LBI, Defendant's statement in Part 4 of his INS Form N-400, Application for Naturalization, that for the five (5) years prior to filing his INS Form N-400 on April 8, 1993, he was only employed by "M.E.F." from January 1, 1992 to December 31, 1992, and "B.I.F." from February 1, 1993 to the time of filing, was false.  Likewise, Defendant's testimony during his sworn naturalization interview that – for the five (5) years prior to filing his INS Form N-400 – he was only employed by M.E.F. from January 1, 1992 to December 31, 1992, and by B.I.F. from February 1, 1993 to the time of filing, was also false.  Defendant knew these statements and testimony to be false, and he provided them with the intent to deceive and to obtain an immigration benefit.

**Memberships and Organizations**

31.  From in or about December 1986 until the time he arrived in the United States in June 1990, Defendant provided direct support to various groups claiming to fight the Soviet Union in Afghanistan.  During this time, Defendant associated with Usama bin Laden, who himself claimed to assist the mujahedeen in Afghanistan, and Gulbuddin Hekmatyar, a leader of one of the Afghan mujahedeen factions.

32.  Defendant provided mujahedeen fighters in Afghanistan with supplies and logistical support.  By providing the mujahedeen with support and or money, Defendant knowingly affiliated himself with various organizations and associations that claimed to repel the Soviet

Union from Afghanistan.  Accordingly, Defendant's statement in Part 9 of his INS Form N-400, Application for Naturalization, filed on April 8, 1993, that he had no present or past membership in or affiliation with any organization or association was false.  In addition, Defendant's sworn testimony during his naturalization interview on September 8, 1993, that he had no present or past membership in or affiliation with any organization or association, was also false.  Defendant knew these statements and testimony to be false, and he provided them with the intent to deceive and to obtain an immigration benefit.

### False Testimony

33.  On September 8, 1993, Defendant provided false sworn testimony regarding his residence; employment history; whether he had ever been a member of or associated with any organizations; whether he had ever provided false testimony for the purpose of obtaining any immigration benefit; and whether he had ever knowingly committed a crime for which he had not been arrested, all for the purpose of obtaining an immigration benefit.  Accordingly, Defendant's sworn testimony that he had never given false testimony for the purpose of obtaining any immigration benefit was false.  Defendant's sworn testimony that he had never committed any crime for which he had not been arrested, was also false.  Defendant knew these statements and testimony to be false, and he provided them with the intent to deceive and to obtain an immigration benefit.

### Prior Crimes

34.  In or about 1993 and continuing to in or about May 2002, Defendant knowingly committed crimes for which, at the time he filed his INS Form N-400, Application for Naturalization, and the time of his sworn naturalization interview on September 8, 1993, he had not been arrested for, to wit:  conspiracy to commit racketeering and corrupt organizations, in

10

violation of 18 U.S.C. § 1962(d); false statements, in violation of 18 U.S.C. § 1001; and false swearing in an immigration matter, in violation of 18 U.S.C. § 1546(a).

       a. On or about October 9, 2002, the United States indicted Defendant for multiple criminal offenses. On January 22, 2003, the United States filed a second superseding indictment charging, among other offenses, that between 1992 and May 2002, Defendant engaged in conspiracy to commit racketeering in violation of 18 U.S.C. § 1962(d), which involved multiple acts indictable under 18 U.S.C. § 1341 (mail fraud), 18 U.S.C. § 1343 (wire fraud), 18 U.S.C. § 1503 (obstruction of justice), and 18 U.S.C. § 1956 (money laundering).

       b. On or about February 10, 2003, Defendant pled guilty to the second superseding count of conspiracy to commit racketeering and corrupt organizations under 18 U.S.C. § 1962(d). In his plea, Defendant admitted that, beginning in or about May 1993 and continuing until in or about May 2002, he engaged in a conspiracy to commit racketeering in violation of 18 U.S.C. § 1962(d), which involved acts indictable under 18 U.S.C. § 1341 (mail fraud) and 18 U.S.C. § 1343 (wire fraud). The Court entered a judgment of conviction on February 10, 2003.

       c. Pursuant to his February 10, 2003 conviction, the Court sentenced Defendant to 136 months imprisonment. Subsequently, on February 17, 2006, the Court resentenced Defendant to 120 months imprisonment.

35. Based on Defendant's commission of these offenses, his statement in response to Question 15(a) in Part 7 of his INS Form N-400, Application for Naturalization, that he had never knowingly committed any crime for which he had not been arrested, was false. Likewise, Defendant's sworn testimony during his naturalization interview on September 8, 1993, that he

had never knowingly committed any crime for which he had not been arrested, was also false. Defendant knew these statements and testimony to be false, and he provided them with the intent to deceive and to obtain an immigration benefit.

36.  Defendant's false statements on his INS Form N-400, Application for Naturalization, and false testimony during his naturalization interview on September 8, 1993 were material. Defendant's false statements and testimony misled the INS and cut off material lines of inquiry.

## EMPLOYMENT AND AFFILIATION
## WITH THE BENEVOLENCE INTERNATIONAL FOUNDATION

37.  From at least in or about May 1993 through in or about May 2002, Defendant was an employee or associated with the Benevolence International Foundation, Inc. ("BIF").

a.  Beginning in or about May 1993 through in or about May 2002, Defendant was responsible for and directed BIF's operations in the United States.

b.  Defendant used funds donated to the BIF to purchase materials and supplies for various fighters and military groups.

c.  BIF was incorporated in Illinois in March 1992 and the Internal Revenue Service granted the BIF tax exempt status in May 1993.

d.  Beginning in May 1993, BIF, through its employees, solicited donations from the public by purporting that BIF and its related overseas offices were a charitable organization involved solely in humanitarian work for the benefit of civilian populations.

e.  In fact, the objectives of the BIF were to support the activities of mujahedeen fighters in various areas of the world by raising funds and providing support to mujahedeen and others engaged in violence and armed confrontation.  This included providing support to al-Qa'ida and Hezb-e-Islami.

f.  The United States State Department designated al-Qa'ida as a Foreign Terrorist

12

Organization in October 1999. Al-Qa'ida was established by Usama bin Ladin in 1988 with Arabs who fought in Afghanistan against the Soviet Union. The group helped finance, recruit, transport, and train Sunni Islamic extremists for the Afghan resistance. Al-Qa'ida's goal is uniting Muslims to fight the United States and its allies, overthrowing regimes it deems "non-Islamic," and expelling Westerners and non-Muslims from Muslim countries. Its ultimate goal is the establishment of a pan-Islamic caliphate throughout the world. Al-Qa'ida leaders issued a statement in February 1998 under the banner of "The World Islamic Front for Jihad Against the Jews and Crusaders" saying it was the duty of all Muslims to kill United States citizens, civilian and military, and their allies everywhere. Top al-Qa'ida leaders have plotted and directed terror attacks worldwide, to include multiple attacks in 2005 against the London public transportation system and the September 11, 2001 attacks in New York, New York, Washington, District of Columbia, and Shanksville, Pennsylvania. In October 2000, al-Qa'ida conducted a suicide attack on the USS Cole in the port of Aden, Yemen, killing 17 United States Navy sailors and injuring 39. Al-Qa'ida carried out the August 1998 bombings of the United States Embassies in Nairobi and Dar es Salaam, killing at least 301 individuals and injuring more than 5,000 others. Al-Qa'ida and its supporters claim to have shot down United States helicopters and killed United States servicemen in Somalia in 1993 and to have conducted three bombings that targeted United States troops in Aden, Yemen, in December 1992.

g. Hezb-e-Islami, or "Party of Islam," is a political and paramilitary organization in Afghanistan founded in 1976 by Gulbuddin Hekmatyar, who has been prominent in various Afghan conflicts since the late 1970s. Hezb-e Islami Gulbuddin (HIG) is an

13

offshoot of that original Hezb-e Islami, and is a virulently anti-Western insurgent group whose goal is to replace Afghan President Hamid Karzai's regime with an Islamic state rooted in sharia (Islamic law), in line with Hekmatyar's vision of a Pashtun-dominated Afghanistan. His group conducts attacks against Coalition forces, Afghan Government targets, and Western interests in Afghanistan.

h. On November 19, 2002, the United States Department of Treasury designated the BIF as financiers of terrorism under Executive Order 13224. The Department of Treasury stated that substantial evidence documented the close relationship between Defendant, who was the BIF Chief Executive Officer, and a member of BIF's Board of Directors, and bin Laden. Further, the Department of Treasury's designation noted that Defendant worked with other persons, including members of al-Qa'ida, to purchase rockets, mortars, rifles, and offensive and defensive bombs, and to distribute them to various mujahedeen camps, including camps operated by al-Qa'ida.

i. In its November 19, 2002 designation, the Department of Treasury also concluded that the BIF provided additional support for and has been linked to al-Qa'ida and its operatives in other ways. The BIF lent direct logistical support in 1998 to Mamdouh Mahmud Salim, a lieutenant of bin Laden who was indicted for conspiring to kill United States nationals. The BIF is also linked to Mohamed Loay Bayazid, who was implicated in the United States embassy bombings trial for his efforts to obtain weapons components on behalf of bin Laden. Bayazid's 1994 driver's license application identifies his address as the address of BIF's Illinois office.

j. On November 21, 2002, pursuant to paragraphs 1 and 2 of resolution 1390, the United Nations listed the BIF as being associated with al-Qa'ida and bin Laden for

14

"participating in the financing, planning, facilitating, preparing or perpetrating of acts of activities by, in conjunction with, under the name of, on behalf or in support of . . . supplying, selling or transferring arms and related materiel to" or "otherwise supporting acts or activities of" bin Laden and al-Qa'ida.

### III.  THE RELEVANT LAW

38.  Under section 340(a) of the INA, the Court must revoke Defendant's naturalization and cancel his Certificate of Naturalization if his naturalization was either: (a) illegally procured, or (b) procured by concealment of a material fact or by willful misrepresentation.  *See* 8 U.S.C. § 1451(a).

### COUNT I

### ILLEGAL PROCUREMENT OF NATURALIZATION
### LACK OF GOOD MORAL CHARACTER
### (FALSE TESTIMONY)

39.  The United States re-alleges and incorporates by reference paragraphs 1 through 38 of this Complaint.

40.  Defendant illegally procured his naturalization because he was statutorily precluded from establishing the good moral character necessary to naturalize on account of his false testimony for the purpose of obtaining an immigration benefit.

41.  An applicant for naturalization must satisfy the statutory requirement of demonstrating that he is a person of good moral character.  *See* 8 U.S.C. § 1427(a).

42.  An applicant for naturalization is statutorily precluded from establishing the good moral character necessary to naturalize if he has given false testimony for the purpose of obtaining an immigration benefit.  *See* 8 U.S.C. § 1101(f)(6).

43.  On September 8, 1993, an INS officer interviewed Defendant regarding his INS

15

Form, N-400, Application for Naturalization. At the beginning of his naturalization interview, Defendant took an oath affirming that he would answer all questions truthfully.

44. As discussed in paragraph 13 above, an INS officer asked Defendant about his residence; employment history; whether he had ever been a member of or associated with any organizations; whether he had ever provided false testimony for the purpose of obtaining any immigration benefit; and whether he had ever knowingly committed a crime for which he had not been arrested. Defendant testified under oath about these matters.

45. As discussed in paragraphs 23 through 35 above, this testimony was false.

46. Defendant provided false testimony about his residence; employment history; whether he had ever been a member of or associated with any organizations; whether he had ever provided false testimony for the purpose of obtaining any immigration benefit; and whether he had ever knowingly committed a crime for which he had not been arrested. Defendant's false testimony concealed the fact that he was employed by LBI; associated with mujahedeen fighters in Afghanistan; and had committed crimes of moral turpitude – including conspiracy to commit racketeering, false testimony, and false swearing in an immigration matter – all of which would have precluded him from establishing the good moral character necessary to naturalize.

47. Defendant lacked the good moral character necessary for naturalization because he provided false testimony to obtain an immigration benefit. Defendant's naturalization was therefore illegally procured and must be revoked pursuant to 8 U.S.C. § 1451(a).

## COUNT II

### ILLEGAL PROCUREMENT OF NATURALIZATION
### LACK OF GOOD MORAL CHARACTER
### (CONVICTION OF AN AGGRAVATED FELONY)

48. The United States re-alleges and incorporates by reference paragraphs 1 through 38

16

of this Complaint.

49. Defendant illegally procured his naturalization because he was statutorily precluded from establishing the good moral character necessary to naturalize on account of his conviction of an aggravated felony.

50. One of the requirements to becoming a citizen of the United States is the applicant must satisfy the statutory requirement that he is a person of good moral character. *See* 8 U.S.C. § 1427(a).

51. An applicant for naturalization is statutorily precluded from establishing the good moral character necessary to naturalize if, at any time, he has been convicted of an aggravated felony. *See* 8 U.S.C. §§ 1101(f)(8), 1101(a)(43); 8 C.F.R. § 316.10(b)(1)(ii).

52. On February 10, 2003, the United States District Court for the Northern District of Illinois entered a judgment of conviction against defendant for conspiracy to commit racketeering and corrupt organizations in violation of 18 U.S.C. § 1962(d). Subsequently, on February 17, 2006, the Court sentenced Defendant to 136 months imprisonment.

53. Conspiracy to commit racketeering and corrupt organizations in violation of 18 U.S.C. § 1962(d) is an aggravated felony the conviction of which precludes a finding of good moral character.

54. Because Defendant admitted to committing and was convicted for an aggravated felony, he was statutorily ineligible to naturalize for lack of good moral character.

55. Defendant's naturalization was therefore illegally procured and must be revoked pursuant to 8 U.S.C. § 1451(a).

17

## COUNT III

### ILLEGAL PROCUREMENT OF NATURALIZATION
### LACK OF GOOD MORAL CHARACTER
### (CRIMES INVOLVING MORAL TURPITUDE)

56. The United States re-alleges and incorporates by reference paragraphs 1 through 38 of this Complaint.

57. Defendant illegally procured his naturalization because he was statutorily precluded from establishing the good moral character necessary to naturalize on account of his commission of crimes involving moral turpitude.

58. One of the requirements to becoming a citizen of the United States is the applicant must satisfy the statutory requirement that he is a person of good moral character. *See* 8 U.S.C. § 1427(a). Defendant was required to prove that he was a person of good moral character from five years prior to filing his Application for Naturalization, or April 8, 1988, until the time he became a naturalized citizen on March 10, 1994 ("statutory period").

59. An applicant for naturalization is statutorily precluded from establishing the good moral character necessary to naturalize if, during the statutory period, he commits acts which constitute the essential elements of a crime involving moral turpitude. *See* 8 U.S.C. §§ 1101(f)(3), 1182(a)(2)(A)(i)(I); 8 C.F.R. § 316.10(b)(2)(i).

60. During the statutory period, Defendant committed the following criminal offenses: conspiring with others to conduct and participate, directly and indirectly, in the conduct of affairs of an enterprise, which engaged in and the activities of which affected interstate and foreign commerce, through a pattern of racketeering activity, in violation of 18 U.S.C. § 1341 (mail fraud) and 18 U.S.C. § 1343 (wire fraud), all in violation of 18 U.S.C. § 1962(d); false statements, in violation of 18 U.S.C. § 1001; and false swearing in an immigration matter, in

18

violation of 18 U.S.C. § 1546(a).

a. <u>Conspiracy to Conduct and Participate in Racketeering Activity</u>: Beginning in or about May 1993 and continuing until in or about May 2002, Defendant engaged in a conspiracy to commit racketeering which involved acts indictable under 18 U.S.C. § 1341 (mail fraud) and 18 U.S.C. § 1343 (wire fraud). On or about February 10, 2003, Defendant pled guilty to this charge and its elements in the United States District Court for the Northern District of Illinois. All are in violation of 18 U.S.C. § 1962(d).

b. <u>False Testimony</u>: On or about September 8, 1993, Defendant did willfully and knowingly make and cause to be made materially false, fictitious, and fraudulent statements and representations in a matter within the jurisdiction of a department or agency of the United States. As discussed in paragraph 13 above, Defendant testified before an INS officer about his employment history; whether he had ever provided false testimony for the purpose of obtaining any immigration benefit; whether he had ever committed any crime for which he had not been arrested; and whether he had ever been a member of or associated with any organizations. As discussed in paragraphs 23 through 35 above, Defendant knew these statements and representations were false. All are in violation of 18 U.S.C. § 1001.

c. <u>False Swearing in an Immigration Matter</u>: On or about the dates of April 8, 1993 and September 8, 1993, Defendant did knowingly make under penalty of perjury under 28 U.S.C. § 1746 false statements with respect to material facts in a document required by the immigration laws and regulations prescribed thereunder, to wit: an INS Form N-400, Application for Naturalization. As alleged at paragraphs 11 through 12 above, Defendant made false statements relating to his residence; employment history;

whether he had ever provided false testimony for the purpose of obtaining any immigration benefit; whether he had ever committed any crime for which he had not been arrested; and whether he had ever been a member of or associated with any organizations. As alleged in paragraphs 23 through 35 above, Defendant knew these statements to be false. All are in violation of 18 U.S.C. § 1546(a).

61. Conspiring to commit acts of racketeering, false statements, and false swearing in an immigration matter all constitute crimes involving moral turpitude.

62. Because Defendant committed more than one crime involving moral turpitude during the statutory period, he was statutorily ineligible to naturalize for lack of good moral character.

63. Defendant's naturalization was therefore illegally procured and must be revoked pursuant to 8 U.S.C. § 1451(a).

## COUNT IV

### ILLEGAL PROCUREMENT OF NATURALIZATION
### LACK OF GOOD MORAL CHARACTER
### (AFFILIATION WITH CERTAIN ORGANIZATIONS)

64. The United States re-alleges and incorporates by reference paragraphs 1 through 38 of this Complaint.

65. Pursuant to 8 U.S.C. § 1424(a)(4), a person is precluded from naturalizing if they are "a member of or affiliated with any organization that advocates or teaches . . . (A) the overthrow by force or violence or other unconstitutional means of the Government of the United States or of all forms of law; or . . . (B) the duty, necessity, or propriety of the unlawful assaulting or killing of any officer or officers . . . of the Government of the United States or of any other organized government because of his or their official character; or . . . (C) the unlawful damage,

20

injury or destruction of property . . . ."[2]

66. Pursuant to 8 U.S.C. § 1101(e), a person is affiliated with an organization when it engages in the act of "giving, loaning, or promising of support or of money or any other thing of value for any purpose to any organization . . . ."

67. Defendant illegally procured his naturalization because he was statutorily precluded from naturalizing under 8 U.S.C. § 1424(a)(4).

68. As discussed in paragraph 37 above, Defendant directed the BIF's United States operations from at least in or about May 1993 through on or about May 2002.

69. Throughout Defendant's involvement in the BIF, Defendant, through the BIF, provided money, goods, and supplies to al-Qa'ida and Hezb-e-Islami. These groups advocated the violent or forceful overthrow of the United States, the duty, necessity, or propriety of the unlawful assaulting of United States officers, and the unlawful damage, injury, or destruction of property. Defendant's providing of support and money to al-Qa'ida and Hezb-e-Islami precluded his naturalization.

70. Defendant's naturalization was therefore illegally procured and must be revoked pursuant to 8 U.S.C. § 1451(a).

## COUNT V

### PROCUREMENT OF UNITED STATES CITIZENSHIP BY CONCEALMENT OF A MATERIAL FACT OR WILLFUL MISREPRESENTATION

71. The United States re-alleges and incorporates by reference paragraphs 1 through 38

---

[2] Pursuant to 8 U.S.C. § 1451(c), if within the five years next following their naturalization, an alien becomes a member of or affiliated with any organization described by provisions at 8 U.S.C. § 1424, it shall be considered *prima facie* evidence that such person was not attached to the principles of the Constitution of the United States and was not well disposed to the good order and happiness of the United States at the time of naturalization, and in the absence of countervailing evidence, it shall be sufficient to authorize the revocation and setting aside of the order admitting such person to citizenship as having been obtained by the concealment of a material fact or by willful misrepresentation.

of this Complaint.

72. Defendant procured his naturalization by willful misrepresentation and concealment of material facts during his naturalization proceedings.

73. As discussed in paragraphs 11 through 12 above, Defendant made false statements on his INS Form N-400, Application for Naturalization, regarding his residence; employment history; whether he had ever provided false testimony for the purpose of obtaining any immigration benefit; whether he had ever committed any crime for which he had not been arrested; and whether he had ever been a member of or associated with any organizations.

74. Defendant signed his INS Form N-400, Application for Naturalization, under penalty of perjury under the laws of the United States, thereby certifying under oath that the information contained therein was true and correct. Defendant filed his application with the INS on April 8, 1993.

75. On September 8, 1993, an INS officer interviewed Defendant regarding his INS Form N-400, Application for Naturalization. At the beginning of his naturalization interview, an INS officer placed Defendant under oath. Defendant affirmed that he would answer all questions truthfully.

76. As discussed in paragraph 13 and paragraphs 29 through 36 above, during his naturalization interview on September 8, 1993, Defendant falsely testified under oath about his employment history; whether he had ever provided false testimony for the purpose of obtaining any immigration benefit; whether he had ever committed any crime for which he had not been arrested; and whether he had ever been a member of or associated with any organizations.

77. At the end of his naturalization interview, Defendant again signed his INS Form N-400, Application for Naturalization, under penalty of perjury under the laws of the United

22

States, thereby affirming under oath that the information contained therein was true and correct.

78. As discussed in paragraphs 16 through 21 above, Defendant made false statements on his INS Form N-445, Notice of Final Naturalization Hearing, regarding his residence and marital status.

79. Defendant signed his INS Form N-445, Notice of Final Naturalization Hearing, thereby certifying that the information contained therein was true and correct. Defendant filed his application with the INS on March 10, 1994.

80. Defendant intentionally misrepresented and concealed his residence; employment history; whether he had ever provided false testimony for the purpose of obtaining any immigration benefit; whether he had ever committed any crime for which he had not been arrested; whether he had ever been a member of or associated with any organizations; and marital status. Defendant knew his statements and sworn testimony about these matters were false and misleading.

81. Defendant's false statements and testimony about these matters was material to determining his eligibility for naturalization. Defendant's false statements and testimony had the natural tendency to influence a decision by INS to approve his INS Form N-400, Application for Naturalization. In fact, Defendant's false testimony, commission of crimes involving moral turpitude, commission of criminal offenses relating to conspiracy to commit racketeering and involvement with the LBI and bin Laden would have precluded him from establishing the good moral character necessary for naturalization. In addition, Defendant's marital status would have precluded him from establishing the necessary continuous residency for naturalization. The INS would have denied Defendant's INS Form N-400, Application for Naturalization, had he been truthful. Defendant thus procured his naturalization by concealment of material facts and willful

23

misrepresentations.

82. Denaturalization is required when an alien has concealed material facts or made willful misrepresentations which aided in the receipt of naturalization. *See* 8 U.S.C. § 1451(a). Accordingly, Defendant's naturalization must be revoked pursuant to 8 U.S.C. § 1451(a).

## COUNT VI

### ILLEGAL PROCUREMENT OF NATURALIZATION LACK OF MARITAL UNION WITH U.S. CITIZEN SPOUSE

83. The United States re-alleges and incorporates by reference paragraphs 1 through 38 of this Complaint.

84. Defendant illegally procured his naturalization because he failed to establish that he was living in marital union with a U.S. citizen spouse during the three years immediately preceding the date of filing his application.

85. In general, an applicant for naturalization must satisfy the statutory requirement of continuous residence within the United States, after being lawfully admitted for permanent residence, for at least five years immediately preceding the date of filing his application. *See* 8 U.S.C. § 1427(a)(1).

86. An applicant for naturalization who is the spouse of a U.S. citizen, however, may apply for naturalization after continuous residence within the United States, after being lawfully admitted for permanent residence, for at least three years immediately preceding the date of filing his application, if during the three years immediately preceding the date of filing his application has been living in marital union with the U.S. citizen spouse. *See* 8 U.S.C. § 1430(a).

87. An applicant for naturalization lives in marital union with his U.S. citizen spouse if the applicant actually resides with his current spouse. *See* 8 C.F.R. § 319.1(b); *see also United States v. Moses*, 94 F.3d 182, 185 (5th Cir. 1996) (holding that "'living in marital union' should

24

be construed as a requirement that the applicant actually reside with the citizen spouse in order to obtain naturalization under section 1430" because "[t]he statute requires a marital union, not simply a marital state").

88. At the time Defendant filed his INS Form N-400, Application for Naturalization, he was not living in marital union with Noyes, his U.S. citizen spouse, and thus did not satisfy the requirements of 8 U.S.C. § 1430(a).

89. Moreover, at the time Defendant filed his INS Form N-400, Application for Naturalization, he had not been lawfully admitted for permanent residence for at least five years immediately preceding the date of filing his application, and thus did not satisfy the statutory requirement of continuous residence within the United States of 8 U.S.C. § 1427(a)(1).

90. Because Defendant was unable to establish the required continuous presence pursuant to 8 U.S.C. § 1427(a)(1) and because he was unable to establish the required marital union with his U.S. citizen spouse pursuant to 8 U.S.C. § 1430(a), he was ineligible for naturalization pursuant to 8 U.S.C. §§ 1429 and 1427(a)(1).

91. Defendant illegally procured his citizenship because at the time he naturalized, he was not continuously present for the required five-year period and did not have the required marital union with his U.S. citizen spouse to meet the three-year requirements of 8 U.S.C. § 1430(a) and this Court must therefore revoke his citizenship as provided for in 8 U.S.C. § 1451(a).

### IV. PRAYER FOR RELIEF

**WHEREFORE**, the United States prays for relief as follows:

(1) Judgment revoking and setting aside the naturalization of the Defendant (which was ordered by the Attorney General of the United States, admitting Defendant to United States

citizenship), and canceling Certificate of Naturalization No. 20910984;

(2)  Judgment forever restraining and enjoining Defendant from claiming any rights, privileges, or advantages under any document which evidences United States citizenship obtained as a result of his March 10, 1994 naturalization;

(3)  Judgment requiring the Defendant to surrender and deliver his Certificate of Naturalization and any other indicia of United States citizenship, as well as any copies thereof in his possession (and to make good faith efforts to recover and then surrender any copies thereof that he knows are in the possession of others), to the Attorney General, or his representative, including the undersigned, immediately; and

(4)  Judgment granting the United States any other relief that may be lawful and proper in this case.

DATED: May 12, 2016                    Respectfully Submitted,

                                       BENJAMIN C. MIZER
                                       Principal Deputy Assistant Attorney General
                                       Civil Division

                                       WILLIAM C. PEACHEY
                                       Director
                                       District Court Section
                                       Office of Immigration Litigation

                                       CHRISTOPHER W. DEMPSEY
                                       Assistant Director
                                       District Court Section
                                       Office of Immigration Litigation

                                       */s/ Anthony D. Bianco*
                                       ANTHONY D. BIANCO
                                       Trial Attorney
                                       District Court Section
                                       Office of Immigration Litigation
                                       United States Department of Justice
                                       P.O. Box 868, Ben Franklin Station
                                       Washington, DC 20044
                                       Telephone: (202) 305-8014
                                       Fax: (202) 305-7000
                                       Email: anthony.d.bianco@usdoj.gov

                                       *Attorneys for Plaintiff*

**CERTIFICATE OF SERVICE**

I hereby certify that on May 12, 2016, I filed the foregoing Plaintiff's First Amended Complaint to Revoke Naturalization with the Clerk of the Court through the Court's ECF system. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties via transmission of Notices of Electronic Filing generated by CM/ECF.

DATED: May 12, 2016

/s/ Anthony D. Bianco
ANTHONY D. BIANCO
Trial Attorney
U.S. Department of Justice
Civil Division
Office of Immigration Litigation
District Court Section
P.O. Box 868, Ben Franklin Station
Washington, D.C. 20044
Phone: (202) 305-8014
Facsimile: (202) 305-7000
Email: anthony.d.bianco@usdoj.gov

*Attorney for Plaintiff*

28